THE OHIO AND MISSISSIPPI RAILROAD COMPANY *v.* CRARY AND WIFE, LEWIS FRENCH, DANIEL S. FRENCH, AND GEORGE C. SARGENT.

1. When a covenantee, in a joint covenant, for the conveyance of real estate, is ready and willing to pay the purchase-money at or within the

time limited, and the agent of the covenantors to receive it can not be found, or the heir of one of them, by reason of nonage, can not execute a proper deed, a formal tender of the money is not necessary; but a petition may be filed for a conveyance, offering to bring the money into court.

2. A tender of a deed by a part of the joint covenantors, with a demand for their share of the purchase-money, refused by the plaintiff, does not bar his right to relief. He is entitled to receive a complete conveyance, and to make a single payment.

3. The covenant of married women to convey their real estate, though contained in a deed in which they are joined by their husbands, and properly executed and acknowledged, can not be specifically enforced.

4. But it binds them by way of estoppel, and where it is contained in a deed of lease for 99 years, the purchase-money being paid into court, an injunction will be allowed, restraining them from the collection of rents, and from setting up any title to the premises, during the pendency of the lease.

5. When one of the defendants is a minor, the money will be ordered to remain in court, until he arrives at full age.

SPECIAL TERM.—Action for the specific execution of a cove-nant in a lease by making a conveyance of the premises, by deed in fee simple, to the assignee of the original lessee.

The facts are sufficiently shown in the decision.

*Coffin & Mitchell*, for plaintiff.

*French & Kirby*, for defendants.

SPENCER, J. The history of this case is as follows: David Sargent died, seized in fee of a certain lot in Cincinnati, situated on West Front street, sixty-four feet in front, and running to the Ohio river, leaving a widow, named Martha, afterward married to John C. Brown; and three children, Mary Jane, intermarried with Henry Decamp; Maria, intermarried with Lewis French; and George C. Sargent.

On the 29th day of October, 1845, Brown and wife, Decamp and wife, French and wife, and George C. Sargent, describing themselves as heirs-at-law of David Sargent, deceased, executed a lease of said lot, to William Ford, for a

9

term of ninety-nine years, at an annual rent of $96, payable semi-annually, on the first days of November and May, during the first fifteen years; and at the end of each successive fifteen years, thereafter, during said term, the premises were to be revalued, by persons mutually chosen, and for each of said periods, the rent was to be paid at the rate of six per cent., upon the sum for which the premises, during such period, should be appraised, unless the lessee, or his assigns, should purchase the property, agreeably to a clause in said lease, as follows :

" It is further agreed between the parties of the first and second parts, their heirs, executors, administrators or assigns, that the said parties, of the first part, shall convey said premises, in fee, to the said party of the second part, provided the said party of the second part, shall pay the rents and charges hereinafter mentioned, and the sum of twenty-five dollars per foot front, for said premises, within ten years hereafter."

The charges referred to were taxes and assessments. Ford assigned his interest in the lease to Boal, and Boal to the plaintiff. After the making of the lease, a partition was had among the heirs of Sargent, of this lot, with other property, by which these premises were apportioned to Maria French and Mrs. Decamp, now Crary. The lease was executed and acknowledged in due form of law, agreeably to the statute providing for the execution of deeds and other instruments for the conveyance of lands, by husband and wife. Brown and wife have both died. Decamp died, and his widow is now married to Crary. Mrs. French has also died, leaving David S. French, an only child, and her sole heir-at-law, aged about eleven or twelve years; so that at the time of filing the petition in this case, Mrs. Crary owned, and now owns, the one-third of the premises, as original heir-at-law, and the one-sixth, being the one-half of George C. Sargent's interest. Lewis French had, and still has, a life-estate in the other half, —one-third the original interest of his wife, Maria, and one-sixth, the residue of Sargent's interest—and David S. French has the reversion.

On the 27th day of October, 1855, the plaintiffs, having complied with the covenants on their part, contained in the lease, were desirous of getting the fee of the premises, on payment of the sum stipulated for in the lease, that is, at the rate of twenty-five dollars per front foot, being in all $1600. They had the funds ready, and sought out the parties interested in the property, and, in making the conveyance, Sargent, and Crary and wife, had appointed French as their agent, to represent their interests and receive the money. French, although a resident thereof, was not in the city at the time, and did not return until after the 29th. The plaintiffs, by their agents, called at the office of French, for the purpose of making a tender of payment, but, as he was away, none could be made. They again called, for the same purpose, on the 29th, and failed for the same reason. On the same day, being the last day of the ten years in which payment was to be made, the present action was brought, for the purpose of procuring a conveyance in fee of the premises,—or, in other words, of having a specific execution of the agreement in the lease, to convey the premises in fee, on the payment of said sum. The petition avers the readiness and willingness of the plaintiffs to pay the money, and contains a demand for such relief as the nature of the case may require. The answers of Crary and wife admit the validity of the contract, in the first instance, and their willingness to comply with its terms, but say that, a few days after filing of the bill, they tendered the plaintiffs a deed for their interest in the property, viz: the west half, and demanded from them payment of their proportion of the purchase-money, which the plaintiffs refused to make and receive, wherefore they say they are not bound now to convey said premises.

The answers of Lewis French, and of David, his infant child, deny the readiness of the plaintiffs to complete the purchase within the time appointed in the lease; and the latter submits that no judgment, or decree, can be had against him. So far as the defense set up by Crary and wife, and by Lewis French, is concerned, that the plaintiffs have

not been prompt in evincing a desire to have a conveyance, and in making a tender of the price thereof, it is not sustained by the facts in proof. The petition itself was promptly filed within the time limited in the lease for purchasing the fee, and the plaintiffs have shown a readiness and ability to make the payment required. It is true they did not make any tender in form; nor was a tender necessary in equity, since a vain thing was not required at their hands. Had the money been proffered, there was no one to receive it and execute a conveyance of the premises, at least on the part of the infant child of Mrs. French, and the plaintiffs, having agreed for the purchase of an entire thing, were not required to take a conveyance in parcels. The bringing of an action was necessary to enable the plaintiffs to get in the entire title, and having done so within the time required, and shown their readiness to fulfill the conditions of the agreement, they are not to be held responsible for a failure to perform that which was occasioned by no fault of theirs, but are entitled to relief against it. 3 Brown, Ch. C. 529, *Bayley* v. *Corporation of Leominster;* 14 Ves. Jun. 41, *City of London* v. *Mitford;* 4 Russ. Ch. 89, *Harries* v. *Bryant.*

The chief ground of contention in the case, however, is as to whether this covenant to convey, on the part of Mrs. Crary and Mrs. French, they being married at the time of executing the lease, is of any validity as to them and those claiming under them. If so, to what extent, and how is it to be enforced? It is a thoroughly established principle of the common law, that a married woman is incapable of making any contract binding upon her person or estate, except in the single case of a fine, with covenants, levied by her jointly with her husband. In such case, she may be sued, even at law, upon her covenants, and thereby be held personally upon them. This exception does not prevail in the United States generally, if it does now in any of them, for the simple reason that a conveyance by fine and recovery, is here unknown, having never been adopted in our jurisprudence. As a substitute for the conveyance by fine,

we have adopted the easier and simpler mode of a convey-
ance by deed, in which husband and wife unite, the wife
being examined, separate and apart from her husband, by
some officer appointed by law for that purpose. In Ohio,
this has always been provided for by statute. The earliest
provision thus made, was by the law of 1795, 1 Chase, 186,
which reads as follows:

"Sec. 1. Where any husband and wife shall hereafter in-
cline to dispose of and convey the estate of the wife, or her
right of, in, or to any lands, tenements, or hereditaments
whatsoever, it shall and may be lawful for said husband and
wife to make, seal, deliver, and execute, any grant, bargain
and sale, lease, release, feoffment, deed, conveyance, or assu-
rance, in the law whatsoever, for the lands, tenements, etc.,
intended to be by them passed and conveyed;" etc.

This was re-enacted in 1805, and continued in force until
1818, when the phraseology of the law was changed so as
to correspond substantially with the provisions of the statute
now in force, and which reads as follows:

"That when a husband and wife shall execute any deed,
mortgage, or other instrument of writing, for the convey-
ance or incumbrance of the estate of the wife, or her right
of dower in any land, tenement, or hereditament, etc., such
deed, mortgage, or other instrument of writing, shall be
signed and sealed, etc., and the officer, etc., shall read, or
otherwise make known to her (the wife), the contents of
such deed, mortgage, or other instrument of writing;" etc.

The words of the present statute would seem to be some-
what more comprehensive than those of the former law,
the word "incumbrance" being substituted for the words
"pass" and "dispose of," though I am by no means sure
that the power to "dispose of" does not necessarily include
the power to "incumber." These provisions of law were
not intended to enable married women to make contracts
which should bind themselves personally, and to be enforced
by action, but to enable them simply to convey, or incumber,
their interest in lands, by contract executed, requiring no

future act to give it effect. If they were intended to be enforced by action, a right of action would have been expressly given. The deeds, or other instruments, for the conveyance or incumbrance of lands, must be such as to create legal, not equitable, rights—rights which a court of law must uphold and enforce. And our reports abound in cases where it has been held, that an instrument, inoperative as a deed at law, will be rendered effectual in equity as an agreement to convey. If, then, as is claimed by the plaintiff's counsel, a written agreement to convey, executed by husband and wife, with all the formalities required by the statute, must be regarded as an incumbrance of the wife's estate, within the meaning of the law, then the agreement must create legal, as well as equitable, rights, and the contract must be such as a court of law, under our former system of practice, could enforce. The remedies, likewise, afforded to the parties respectively, should be mutual. If a good contract at law, husband and wife could sue for a breach, and recover damages. But the purchasers can not sue the husband and wife jointly, and recover damages, and a case can not be found, of such a recovery, except upon their covenants in a fine, of which a strong instance may be seen in 2 Saund. 180, *Wotton* v. *Hele.* There is no reported case of an attempt, in Ohio, to recover, at law, against the wife, for the breach of such a contract. The only case where the question seems to be considered at all, is 8 Ohio, 222, *Hill's Lessee* v. *West.* In that case, a married woman had executed a deed, in fee simple, with covenants of warranty. It was held that an after-acquired interest passed by the covenants, upon the principle of estoppel, although it was said she could not be subjected to an action for damages upon the covenants, "full effect being given to the statute by holding that a deed, executed in conformity with it, operated to convey the estate contemplated." In New York, 15 Johns. 483, *Whitbeck* v. *Cook and Wife*, it has been held that an action of covenant does not lie against a married woman, to enforce her covenants in a deed of convey-

ance, upon the ground that the statute authorizing married women to convey an interest in land did not empower them to enter into collateral covenants. And in the subsequent case, 17 Johns. 167, *Jackson* v. *Vanderheyden*, it was held that such covenants did not operate, even by way of estoppel, because not personally binding on her. In Massachusetts, it has been held that an action will not lie against a married woman upon her covenant or warranty; 7 Mass. 291, *Colcord* v. *Swan;* Ibid, 21, *Fowler* v. *Shearer;* although such covenants are said to operate by way of estoppel, upon the ground of immemorial usage.—Ibid.

In Virginia, it has been held that a statute which enacted " that all deeds, etc. by husband and wife, etc. shall be good and effectual to convey the estate, etc., as if the same had been done by fine and recovery," adopted all the incidents of a conveyance by fine, among which were the liability of the wife upon her covenants at law and in equity; and accordingly, specific performance of a covenant for further assurance was decreed; 3 Call. 394, *Nelson* v. *Harwood.* This decision stands alone in the American Reports. It is predicated upon the particular phraseology of the law; and was so uncongenial to the people of that State, that a statute was subsequently passed, providing "that no covenant or warranty contained in any deed, executed by a *feme covert*, should operate in any manner upon her, or her heirs, other than to convey, effectually, her interest in the land at the date of such deed." Ibid. 394, note. This case is referred to by our Supreme Court, in *Hill* v. *West*, already cited, and it is intimated that it is not in accordance with the established rule in Ohio.

It has been already said that the conveyance, or incumbrance, authorized to be made or created by the wife, must be intended as a legal conveyance, or incumbrance, such as the law will uphold and enforce. And if a court of law will not enforce it by action, a court of equity will not by a decree for a specific performance. This point was decided in 10 Ohio, 305, *Carr* v. *Williams.* That was the case of a

bill to correct a mistake in a deed, executed by husband and wife, of the wife's property. The deed was duly executed and acknowledged, and contained the usual covenants of warranty on the part of husband and wife, but the names of the grantors were omitted from the granting part of the deed. The bill was filed to correct the mistake, and have the title quieted. Relief was not asked upon the ground that there had been a valid agreement to convey, which should be specifically enforced, as it would have been had the bill been exhibited against the husband alone. The learned counsel conceded that such a bill could not be entertained, saying: "We do not ask specific performance of a contract to convey; we only ask that a clerical omission may be supplied, in a case in which all the forms of law for the protection of the wife have been complied with. There is a broad distinction between an executory and an executed contract in this respect. The wife can make no valid executory contract, and hence specific performance is never decreed against her. But she can make a valid deed, and in the present case designed to do so; and all we ask is, that the court may make her act valid by supplying a clerical omission"—p. 307. The same view was taken by defendants' counsel—p. 309. And to these views of counsel the court fully respond. "A deed (say the court) which is intended to convey the legal estate, but which is so imperfectly executed as to fail of effecting that object, may be treated as an agreement to convey, and enforced specifically. But can the deed of a *feme covert*, thus executed, be regarded as an agreement to convey, the specific performance of which will be decreed against her, or be rectified so as to bind her right?" And the question is answered, by saying that the statute enables married women only to execute conveyances perfect to convey title within themselves. "If," say the court, "a deed, the body of which was defective, was still to be treated as an agreement to convey, or as an imperfect conveyance, other provisions of the statute would be disregarded. The acknowledgment

and separate examination would not be to such an instrument as the law contemplates." The same view was taken by both counsel and court in 17 Ohio, 105, *Purcell* v. *Goshorn* and wife. The court say, on p. 124: "No precedent, as it is supposed, can be found of a decree against a *feme covert* to convey lands, held by descent, etc., upon the ground of her having agreed to convey, or her having executed any defective conveyance, whether upon a full consideration paid or not; and the fraud of the wife in the transaction would make no difference." Viewing the contract, therefore, in the present case, as an agreement to convey merely, I do not see how it can be specifically enforced.

But is the contract wholly inoperative, so as that no effect whatever can be given to it? It seems to me not. Because full effect may not be given to it, so as to enforce it specifically—yet courts, both of law and equity, may give it effect so far as it necessarily executes itself, and, like a covenant of warranty, it may be so far regarded as to operate in the nature of an estoppel. In the case of *Hill* v. *West*, already cited, the court, in speaking upon the subject of such covenants, say on p. 226: "When a married woman undertakes, in conjunction with her husband, to convey her land, with covenants of warranty, it is sufficient to protect her from the payment of damages for the breach of these covenants; for all other purposes they should be held operative." The covenant, in the present case, is annexed to the grant itself, and is inseparably connected with the conditions of that grant. The lease is a contract, or conveyance, executed for ninety-nine years, reserving rent to the grantors. The rent is payable semi-annually, at the rate of $96 per annum, for the first fifteen years, and such other sum during each period of fifteen years thereafter, as shall amount to six per cent. upon the value of the property; provided, and it is stipulated, that said rent shall not be called for, if the lessee shall make the purchase for the stipulated price—that is, should pay at the rate of twenty-five dollars per front foot for said premises, at any time within ten years from the

date of said lease, in which event the lessees agree to make a deed in fee simple for said premises. Now, the effect of this stipulation is as though an annual reservation of rent had been made, to be relaxed, or compounded, on payment of a certain sum in gross within a specified time. Payment, or tender, within the time, puts an end to the obligation to pay periodically, and there can be no recovery of the rent periodically, according to the very terms of the grant. So, neither can the lessors recover, or demand, the sum in gross, without fulfilling on their parts the terms of the contract, by executing a deed conveying the premises in fee simple. Until they do so, there is no obligation on the part of the grantees to pay rent; and the grant, being executed, must stand as one without condition.

Upon payment of the money into court, the defendants will be enjoined from setting up any title to the premises, during the pendency of the lease, or enforcing payment of rents; the money to remain in court until the infant defendant arrives at the age of twenty-one years.

Crary and wife, neglecting to convey, will be decreed to convey the undivided half of the premises; French to convey the other half, with covenants against the heirs of Mrs. French, and David S. French the one-sixth, or the one-third of his half, and, by the election of his guardian, the other interest; and the money to be paid for this interest to be invested, under the direction of a master, for the benefit of Lewis French for life, with remainder to his son.